[Civ. No. 15533.   Second Dist., Div. One.   Mar. 17, 1947.]

LEON HATCH, Respondent, v. W. J. MURPHY et al.,
Appellants.

Charles W. Rollinson for Appellants.

Kenneth Sperry for Respondent.

WHITE, J.—By his complaint in the within action plaintiff alleged that on or about July 12, 1944, the defendants sold him a used automobile for the sum of $1,795 plus taxes, license and transfer fees; that at the time of the sale the maximum price fixed by the Office of Price Administration was $1,090 plus sales taxes and other charges, making the total maximum price $1,133.25, and resulting in an overcharge of $724.53. It was further charged that the alleged violation of OPA regulations was willful on the part of defendants. The prayer was for damages in the amount of three times the overcharge, plus attorney's fees. After trial before the court, sitting without a jury, findings were made in favor of plaintiff, fixing his damages at $1,000 plus attorney's fees of $350, and judgment was entered accordingly. From such judgment defendants prosecute this appeal. An appeal by plaintiff, on the ground that the court should have awarded him treble damages, has been dismissed.

On July 9, 1944, prior to the establishment of an OPA ceiling on used cars, plaintiff entered into an agreement for the purchase of a used Pontiac coupe from defendant Murphy Motors, the sale being handled by the defendants Flynn, a salesman, and Neill, the sales manager. The transaction was evidenced by a "car order" for the car in question as well as insurance thereon, the price of the car being $1,695, plus sales tax of $42.38, license and transfer fees of $17.90, a total of $1,755.28. The plaintiff on this date made a cash payment of $735.28 and took delivery of the vehicle. It was provided in the agreement that plaintiff might pay the balance of $1,020 in cash by July 15, that he should have a "5-day trial exchange," and that "title of ownership does not pass to me (plaintiff) until the final cash payment is made." With the delivery of the car plaintiff also received a so-called "Good Will Automobile Guaranty," which included in its terms the provision that "this car may be returned by the purchaser within five days if it proves unsatisfactory and the money paid on it will be applied as a credit on the immediate purchase of any other car of equal or greater price (new or used) which is our property, providing the car being returned is in the same condition as when originally delivered."

On July 10, 1944, a ceiling was placed on the price of used cars by Maximum Price Regulation 540. Under the regulation the price of a car of the type purchased on July 9,

was fixed at $995 "as is," plus 25 per cent if sold under the warranty prescribed by the regulation.

On July 12, 1944, plaintiff returned the Pontiac coupe to Murphy Motors and availed himself of the option to apply the money theretofore paid toward the purchase of a different used car. He chose a Pontiac four-door sedan, for which he was charged the preceiling price of $1,795 plus the usual tax and transfer fees. The ceiling price of this second car was $1,090 "as is" plus 25 per cent if accompanied by the prescribed regulation warranty.

It is urged as grounds for reversal that the court erred in giving judgment for plaintiff when in fact the plaintiff suffered no loss (the difference between the OPA price of the respective cars being very near the difference between the preceiling price of the same two cars) ; that as a matter of law no violation took place; and that if there was a violation it was not willful and the judgment should have been limited to the actual amount of the overcharge. In this connection appellant contends that both cars were sold as "warranted" cars and that the net difference between the total warranted price of each car was $121.72. The difference charged to plaintiff upon the exchange was $102.50.

Under the facts present in this case we fail to perceive wherein any violation of the OPA Maximum Price Regulation No. 540 occurred. On July 9, 1944, prior to the effective date of the regulation, respondent contracted with appellants to purchase a 1941 Pontiac coupe. The transaction was in the form of a conditional sales agreement under the terms of which it was agreed that "the title of ownership does not pass" to the purchaser "until the final payment is made." As part of the same transaction, it was further agreed in writing that respondent purchaser was to be permitted to take the vehicle out on approval and should the same prove unsatisfactory the purchaser was entitled to return it within five days "and the money paid on it will be applied as a credit on the immediate purchase of any other car of equal or greater price (new or used)" which was then the property of appellant Murphy.

Availing himself of this privilege, respondent, within the requisite five days, returned the automobile purchased on July 9, and selected a 1941 four-door Pontiac sedan, upon the purchase price of which he was given credit for the money paid by him on the July 9th contract. Obviously, the latter

transaction was had in accordance with and fulfillment of the contract of purchase entered into on July 9, 1944, prior to the effective date of the ceiling price regulation. The regulation in question provides: ". . . (c) Nothing in this regulation shall prevent the fulfillment of any written contract for the purchase of a used car whether in the nature of a conditional sales agreement, rental contract providing for purchase *or other arrangement,* entered into before July 10, 1944, and under which the used car has been delivered prior to July 10, 1944."

In holding that a violation of the OPA regulation occurred the trial court fell into error through its assumption that there were two separate and distinct contracts, one on July 9, and another on July 12. The so-called purchase of the second automobile on July 12, was simply "in fulfillment" of the terms of the contract of July 9. Respondent purchaser was not entitled to rescind in its entirety the original contract of July 9, but by its terms he was limited to retaining the automobile he had purchased or within five days to return it and select another in the same price class. The negotiations with reference to the second automobile were all pursuant to the terms of the original agreement of July 9. There was but one transaction, a transaction in which a used car was delivered prior to the effective date of the regulation, which was July 10; and as an incident to and a part of the contract of July 9, respondent was entitled to return the delivered vehicle and choose another. As heretofore pointed out, the regulation expressly excepted from its terms "any written contract . . . *or other arrangement,* entered into before July 10, 1944, and under which the used car has been delivered prior to July 10, 1944." The transaction with which we are here concerned comes squarely within the exception just referred to.

The judgment is reversed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied April 7, 1947, and respondent's petition for a hearing by the Supreme Court was denied May 15, 1947.